The next case is 21-2516 SEC v. Allen Gottlieb and we're going to hear argument remotely in this matter. Just give us one minute, counsel. All right. Mr. Eisman, you have one minute reserved for rebuttal. Is that correct? That's right, Your Honor. Okay. All right. You may begin when you're ready. All right. First, I just want to apologize to the panel that I didn't quite understand that I wasn't going to be remote. This is the first argument I think I've had since the pandemic and I guess I was a little confused. So I didn't mean any disrespect by not coming in personally. Can you hang on one second? Can we get a little bit more volume, please? The deputy told me it was a little soft. I'll just try to raise my voice and lean forward, maybe. Okay. That would be helpful. Thank you. Go ahead. Your Honor, sometimes the degree of ferventness, that's a word, is directly related to the degree of injustice involved in something. Clearly, Mr. Gottlieb feels there's an injustice here. You can tell that from his brief. And since the case of the trial turned on intent, he might be right. But with respect to the post-judgment proceedings, I can state independently that his wife and his profoundly disabled child have been victims of really almost egregious overreach by the SEC, which is trying to get the lower court to apply a wife's proceeds to satisfy a husband's judgment. And no court has gone that far. I won't get into that side issue, but this is a very, very big reach by the SEC. And the contempt proceedings were part of that effort. And that's talked about in the transcript. And I'll go over it again. But the thing that I'm here for, the reason why I agreed to argue this case for Mr. Gottlieb, and I see the clock is really running, and I know you gave him five minutes, because if it's brief, if I'm a minute or two over, I hope you'll indulge me. I've timed this out to try to take four minutes. The questions for the court is whether the record demonstrated that he was contemptuous when he didn't use funds to pay for the judgment when he needed to repair his wife's home, the only viable home they had. Whether the record could support a finding that the funds, which he received $75,000 and which the testimony uncontradicted, was that the tax, after-tax value of that was $40,000, should be the number and not $75,000. And whether the use of that, the $35,000 of that to repair the house, whether that should be added or subtracted from that number. So those are things that were just not really discussed in length in the hearing, or at least certainly not in the judge's decision about this. And so the reason why I wanted to argue this is because Mr. Gottlieb's brief is certainly far from perfect, but he does make the right noise to preserve these issues. And I can go over that if the Your Honor's have questions about where in the brief he But the court painted with a very broad brush. And when you have, you know, judges always operate on imperfect information. But when you have a pro se litigant like Mr. Gottlieb, the information is even more imperfect. And I submit to you that he's entitled to have this case remanded, and I will represent him on the remand. I didn't have the consent, but I will because I want to try to focus Judge Pesk on this. To have her make the specific findings she has to make about his ability to pay, whether that tax should be credited against the $75,000. Because I think, I submit to you, if he is required to do that, and she's focused on this, there's going to be a dearth of evidence allowing her to sustain at least the amount of the contempt that was done, and I think also potentially that the contempt as well. So there was a lot of evidence about how he didn't have the funds. Judge Prescott didn't say she discredited it. She just simply, you know, she took this almost a prima facie case. The SEC put on a lot of detailed testimony about what money he had and what accounts. And I submit that's just not the right way to handle this. When you're going to hold someone in contempt and do the first step of what the SEC may hope is going to be the taking of Mrs. Gottlieb's money. So I submit to you that, and also the trips by the way he made, if I can have about 30 seconds more to finish my, the trips he made to travel or for business, not to live the lifestyle of fun on vacation that the SEC would want to make it sound like. This is a tragic case. And I'm not saying this because I represent Mrs. Gottlieb. Just independently, this is a tragic case of people in their 70s and 80s trying to raise a 30-year-old profoundly disabled Down syndrome child. And they've lived a nomadic existence for the past seven years. All because the SEC has a very overreaching theory. Sometimes hard to keep in mind that courts are here to do justice and not just decide the legal issues before us. But simply by endorsing the lower court's record, Judge Prescott's record, I submit to you that would be a miscarriage of justice. So I hope you will just remand the case with instructions to make the specific findings. He may not win, but at least he'd be entitled to try to get her to make this actual finding. She didn't make this one time around. Thank you for the indulgence. Thank you, Mr. Eisman. And you do have one minute for rebuttal. We'll hear from Ms. Wagner. Good morning. Macy Secord for Wagner for the Securities and Exchange Commission. I would just note that I think this is a very straightforward contempt case. And I think the court's record here is quite clear. The court, in the hearing, went through the three elements of contempt and noted that it was essentially undisputed, that the judgment was clear, that Mr. Gottlieb had not complied, had not made a single payment toward injured investors in 20 years. And the court found that he had not reasonably attempted to comply, given his ability to make at least a partial payment, and his failure to do so. As part of that finding, the court did, I think, discredit Mr. Gottlieb's assertions that he could not afford to pay, in light of the Commission's evidence and in light of the lack of credibility of his ipsa dexia assertion that he could not afford to pay. So what was the evidence that he could pay? The evidence that we're relying on was the bank account records, which showed, you know, over the few years, hundreds of thousands of dollars going into and out of his accounts, his use and receipt of the options proceeds, and his interest in the Bahamas property. And as regards the tax documents and the question of taxes owed, I think that goes to the broader issue that, ultimately, it's Mr. Gottlieb's burden to show that he could not afford to pay. And so, to the extent Mr. ... And the court gave Mr. Gottlieb that opportunity, and it gave Mr. Gottlieb the opportunity to show any tax documents that were relevant to what he had spent or would have spent on the $75,000, my understanding is Mr. Gottlieb was not provided in any of that documentation. So I don't think that provides a particular reason to remand. I'm happy to answer any other questions the court may have. All right, thank you. Ms. Wagner and Mr. Eisman, you have one minute. Thank you, Your Honor. The testimony that there were hundreds of thousands of dollars that go through a bank account, that's painting with a pretty broad brush. In its brief on page 8, it essentially says there is a number of $350,779 that went through the bank accounts over three years. Well, that's an average of about $120,000. Pretty modest for a family of four or five with a profoundly disabled child. So that's not a basis to argue that he could afford to pay, could have paid, or could pay now $75,000 or even $105,000 for the hearing. And then the second point I wanted to respond to was that the testimony about taxes and payment of taxes was not only uncontradicted at the hearing, but as a matter of common sense, it makes sense. If you receive $75,000, unless it's from a tax-free municipal bond or something, on the face of it, you can't say that that money should have been from the SEC. So I just think that was, with all due respect to Judge Peska, I've known her for many years. I just think it was a little bit of sloppy fact-finding because Mr. Gottlieb comes in, not with the most brilliant, burnished reputation, but someone who's been a headache, maybe for good reason, maybe for not. But he's still entitled, and certainly Mrs. Gottlieb and their son derivatively are entitled to, careful fact-finding. And so  All right. Thank you to both counsel. Matter is submitted.